## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF FALCON GLOBAL | * | CIVIL ACTION |
| OFFSHORE II LLC, AS OWNER, SEACOR | * | |
| MARINE LLC AS MANAGER/OPERATOR, | * | NO. 2:21-CV-1062 |
| AND SEACOR LIFTBOATS LLC, AS | * | |
| ALLEGED OWNER/OPERATOR OF THE | * | JUDGE JANE MILAZZO |
| SEACOR POWER PETITIONING FOR | * | |
| EXONERATION FROM OR LIMITATION | * | MAGISTRATE JUDGE |
| OF LIABILITY | * | JANICE VAN MEERVELD |

**********************************************

### ANSWER, AFFIRMATIVE DEFENSES, AND CLAIMS OF DWAYNE LEWIS TO PETITION FOR EXONERATION FORM OR LIMITATION OF LIABILITY

**NOW INTO COURT,** through undersigned Counsel, comes Dwayne Lewis ("Claimant") who pursuant to Supplemental Rule F(5) and Paragraph 4 of the Court's May 4, 2021 Order (Rec. Doc. 10) answers the Petition for Exoneration from or Limitation of Liability (Rec. Doc. 1) filed on behalf of Falcon Global Offshore II LLC, Seacor Marine LLC, and Seacor Liftboats LLC ("Petitioners"), asserts affirmative defenses, and asserts his General Maritime Law damage claims as follows:

### I.  ANSWER TO THE PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY

Claimant answers the individual paragraphs of the Petition for Exoneration from or Limitation of Liability *seriatim*, as follows:

1. Claimant admits that Falcon Global Offshore II LLC ("Falcon"), is a limited-liability company organized and existing under and by virtue of the laws of Delaware, but:

    A. The allegation that Falcon's principal place of business is in Louisiana is denied for lack of lack of sufficient information to justify a belief therein; and

**B.**     The allegation that Falcon was or is the owner of the L/B SEACOR POWER is denied for lack of lack of sufficient information to justify a belief therein.

**2.**     Claimant admits that Seacor Marine LLC ("Seacor"), is a limited-liability company organized and existing under and by virtue of the laws of Delaware, but:

**A.**     The allegation that Seacor's principal place of business is in Louisiana is denied for lack of lack of sufficient information to justify a belief therein;

**B.**     The allegation that Seacor was or is the "manager/operator" of the L/B SEACOR POWER is denied for lack of lack of sufficient information to justify a belief therein; and

**C.**     The allegation that Seacor was or is an "owner" of the L/B SEACOR POWER for purposes of the Limitation of Liability Act  is denied for lack of lack of sufficient information to justify a belief therein.

**3.**     Claimant admits that Seacor Liftboats LLC ("Seacor Liftboats"), is a limited-liability company organized and existing under and by virtue of the laws of Delaware, but:

**A.**     The allegation that Seacor Liftboat's principal place of business is in Louisiana is denied for lack of lack of sufficient information to justify a belief therein; and

**B.**     The allegation that Seacor Liftboats "is incorrectly alleged by certain anticipated claimants to be the owner/operator" of the L/B SEACOR POWER is denied for lack of sufficient information to justify a belief therein.

**4.**     Admitted.

**5.**     Claimant denies that:

**A.**     Plaintiffs in Limitation used due diligence at all times to make and maintain the L/B

SEACOR POWER in all aspects seaworthy; and

    **B.**    On or before March 13, 2021, L/B SEACOR POWER was tight, staunch, strong, fully and competently manned, properly equipped and supplied, and in all respects seaworthy and fit for the service in which she was engaged.

**6.**    Claimant admits that:

    **A.**    On April 13, 2021, shortly after 1200 local time, the L/B SEACOR POWER departed from the berth at Port Fourchon, Louisiana, heading to a Talos Energy LLC ("Talos") facility located at MP-138;

    **B.**    At approximately 1605 local time on April 13, 2021, the L/B SEACOR POWER capsized in the Gulf of Mexico, roughly seven (7) to eight (8) nautical miles off the coast of Louisiana, in federal waters; and

    **C.**    The L/B SEACOR POWER is currently submerged in or around the location of its capsizing, at approximately Lat 29°00'25.7877"N and Long 90°11'52.9852"W.

Claimant denies that:

    **D.**    The L/B SEACOR POWER *unexpectedly* encountered extremely severe winds and seas.

**7.**    Admitted.

**8.**    For lack of sufficient information to justify a belief therein Claimant denies that:

    **A.**    The aforementioned incident was not due to any fault, neglect or want of care on the part of:

        (I)    Petitioners or the L/B SEACOR POWER; and/or

        (ii)    Anyone for whom said Petitioners may be vicariously responsible;

**B.** A weather report was received by the captain on the morning of April 13, 2021 which forecast afternoon winds and seas well within the L/B SEACOR POWER's safe operating limits,

**C.** The Master who was in command of the L/B SEACOR POWER on April 13, 2021 was:

    **(I)** Experienced, well trained and highly competent;

    **(ii)** His decision to depart the berth and proceed with the voyage was reasonable and prudent;

**D.** The voyage proceeded uneventfully for several hours until:

    (I) The weather suddenly and drastically deteriorated to a degree that was unforeseeable; and

    (ii) The weather was well beyond the predicted weather conditions. Within a matter of minutes, the L/B SEACOR POWER encountered heavy seas and hurricane force winds;

**E.** Efforts were made to jack down the legs of the L/B SEACOR POWER and turn the vessel into the winds;

**F.** Before the legs could be lowered to the sea floor, the L/B SEACOR POWER was overcome by forces of nature;

**G.** The L/B SEACOR POWER's capsizing was a force majeure event which Petitioners could not have reasonably anticipated and for which Petitioners are not responsible.

**9.** Denied.

**10.** Admitted.

**11.**     Claimant admits that the styled and numbered lawsuits identified by Petitioners have been

filed in several state and federal jurisdictions in Louisiana and Texas.

For lack of sufficient information to justify a belief therein Claimant denies that:

   **A.**     Other individuals have retained counsel "and may bring claims in the future arising

   out of the aforementioned voyage of the SEACOR POWER"; and

   **B.**     The sum total of all claims expected to exceed the value of the SEACOR POWER

   and its freight pending.

The following are procedural legal assertions which do not require an answer of Claimant,

but in an abundance of caution they are denied:

   **C.**     Petitioners bring this action so that all claims by all interested parties can be promptly

   and fairly adjudicated in a single forum, consistent with procedures

   established by Congress, the Federal Rules of Civil Procedure, and this Court; and

   **D.**     Contemporaneous with the filing of the Petition, Petitioners seek an order from this

   Court establishing a period of time within which any interested party may file a claim

   for damages so that the final adjudication of this matter may proceed expeditiously

   under the Court's supervision.

**12.**     Admitted.

**13.**     Denied.

**14.**     Denied.

**15.**     This procedural legal assertion does not require an answer of Claimant, but in an abundance

of caution it is denied.

**16.**     This procedural legal assertion does not require an answer of Claimant, but in an abundance

of caution it is denied.

17.     This procedural legal assertion does not require an answer of Claimant, but in an abundance of caution it is denied.

18.     This procedural legal assertion does not require an answer of Claimant, but in an abundance of caution it is denied.

19.     Claimant denies that "all and singular the premises of this Complaint for Exoneration from or Limitation of Liability are true and correct."

Claimant admits that the above-captioned matter is within the admiralty and maritime jurisdiction of the United States and of this Honorable Court, and within the meaning and intent of Rule 9(h) of the Federal Rules of Civil Procedure.

20.     The Petitioners' prayer for relief does not require an answer of Claimant, but in an abundance of caution it is denied.

## II. AFFIRMATIVE DEFENSES TO THE PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY

### FIRST AFFIRMATIVE DEFENSE:

The allegations of the Complaint fail to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).

### SECOND DEFENSE:

The Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., is unconstitutional in that it deprives the Claimant of property rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## THIRD AFFIRMATIVE DEFENSE:

The Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., is unconstitutional in that it does not provide for equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

## FOURTH AFFIRMATIVE DEFENSE:

The limitation fund is inadequate and the Petition for Exoneration from or Limitation of Liability should be dismissed because Petitioners have failed to deposit adequate security for the vessel identified in the Petition. Pursuant to Rule F(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the proper limitation fund must be deposited at the time of filing. Petitioners' deposit, at the time of filing, did not meet federal standards. As such, this limitation action must be dismissed.

## FIFTH AFFIRMATIVE DEFENSE:

The Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., is not applicable to the instant case because:

A.    At all times relevant, the L/B SEACOR POWER was operated in a willful, wanton and reckless manner; or, in the alternative,

B.    The conduct and actions which led to the capsize of the L/B SEACOR POWER on April 13, 2021injuries and caused Claimant's damages took place with the privity and knowledge of the Petitioners, owners, managing owners, owners *pro hac vice* and/or operators of the L/B SEACOR POWER.

## SIXTH AFFIRMATIVE DEFENSE:

The Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., is not applicable in the instant

case because, at all relevant times, the L/B SEACOR POWER was known by the Petitioners, owners, managing owners, owners *pro hac vice,* and/or operators to be unseaworthy.

**SEVENTH AFFIRMATIVE DEFENSE**:

To the extent Petitioners' insurers attempt to avail themselves of the exoneration /limitation defense, Claimant asserts that under the circumstances extant, the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*., is unavailable to the insurers of the L/B SEACOR POWER's owners.

**EIGHTH AFFIRMATIVE DEFENSE**:

No prima facie case has been made by Petitioners establishing they are entitled to avail themselves of the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*.

**NINTH AFFIRMATIVE DEFENSE:**

The Petition for Exoneration from or Limitation of Liability contains vague and ambiguous statements which are objectionable under Federal Rule of Civil Procedure 12(e), and Claimant seeks a more definitive statement of the allegations, regardless of the nature, manner and extent of his Answer, Affirmative Defenses, and General Maritime Law Claims pleaded in this document.

**TENTH AFFIRMATIVE DEFENSE:**

The events culminating in the capsize of the L/B SEACOR POWER were the result of gross, willful and wanton negligence, fault and/or want of due care on the part of Petitioners as are those for whom Petitioners are responsible, and/or the unseaworthiness of the L/B SEACOR POWER, all of which was within the privity and knowledge of Petitioners, and the vessel' owners, managing owners, owners *pro hac vice,* and/or operators, for which the Petition for Exoneration from or Limitation of Liability should be denied.

## ELEVENTH AFFIRMATIVE DEFENSE:

The events culminating in capsize of the L/B SEACOR POWER and Claimant's damages were not the result of any negligence, fault or want of due care on his part or those for whom he may have been responsible.

## TWELFTH AFFIRMATIVE DEFENSE:

Claimant alleges that there was insurance coverage on the L/B/ SECOR POWER, insuring Petitioners in the event of an occurrence such as that which is the subject of Claimant's claims, and the proceeds of any such insurance policy should be included in this limitation proceeding in the event the Court determines that these limitation proceedings are appropriate.

## THIRTEENTH  AFFIRMATIVE DEFENSE:

The proceeds of any judgment, award or settlement which may be received by Petitioners from any third-party in recompense for any losses or damages sustained to the property or interests of Petitioners, as result of the fault or alleged fault of said third-party, must be included in the limitation fund.

## FOURTEENTH AFFIRMATIVE DEFENSE:

Claimant specifically reserves all rights to pursue, should he so choose, all available claims in state court or any other federal court for resolution of any and all issues beyond the exclusive jurisdiction of this Admiralty Court pursuant to the "Saving to Suitors" clause, 28 U.S.C. § 1333, and all state law remedies, or other remedies available to Claimant.

## FIFTEENTH  AFFIRMATIVE DEFENSE:

Claimant reserves all rights to pursue, should he so choose, all available claims and rights in the forum of his choice for resolution of any and all issues beyond the exclusive jurisdiction of

this Admiralty Court pursuant to the "Savings to Suitors" clause, 28 U.S.C. § 1333, or any other available remedy, and no part of this Claim and Answer is a waiver of this defense for these rights.

**SIXTEENTH  AFFIRMATIVE DEFENSE**:

Claimant reserves the right to pursue, should they so choose, a motion to lift the injunction and stay of these proceedings in other forums upon Petitioners' failure to obtain relief in this limitation action, should resolution of this action precede judgment in other actions.

**SEVENTEENTH  AFFIRMATIVE DEFENSE**:

The limitation fund is inadequate and should be increased and/or this action should be dismissed because the limitation fund does not properly account for the value of the minerals and other appurtenances, attachments, freight and/or cargo aboard the vessel, subject to the control of the vessel and/or owned by the Petitioners.

**EIGHTEENTH AFFIRMATIVE DEFENSE:**

The incident made the subject of this Claim was caused at least in part, or contributed to, by the fault, neglect, and want of care of the Petitioners and their managerial employees.

**NINETEENTH AFFIRMATIVE DEFENSE:**

Claimant reserves all defenses presented in the instant Answer, Affirmative Defenses, and Claim, with full reservation of all other defenses which may be hereafter asserted due to discovery.

**TWENTIETH AFFIRMATIVE DEFENSE:**

Claimant reserves the right, pursuant to Fed. R. Civ. P. 15(a), to add Falcon Global Offshore II LLC as a party defendant in *Dwayne Lewis v. SEACOR Marine LLC, et al.*, No. 2:21-cv-01056-JTM-JVM (E.D. La.).

### III.  CLAIMANT'S CLAIMS AGAINST THE LIMITATION PETITIONERS

Now, appearing as Claimant in Limitation, Dwayne Lewis asserts the following claims against Seacor Marine LLC, and Seacor Liftboats LLC, and Falcon Global Offshore II LLC ("Petitioners in Limitation"), and Semco LLC,  as follows:

### I. PARTIES

1.     Dwayne Lewis ("Claimant") is a person of the full age of majority and a resident citizen of the State of Louisiana.

2.     Named as parties Defendant are:

   A.     Seacor Marine LLC ("Seacor"), a Delaware limited liability company and a wholly-owned subsidiary of Seacor Marine Holdings Inc., also a Delaware corporation, authorized to do and doing business within the jurisdiction of this Honorable Court, with its principal place of business located 5005 Railroad Avenue, Morgan City, Louisiana 70380.  Seacor claims to be the "manager/operator of the SEACOR POWER" and "an "owner" of the SEACOR POWER for purposes of the Limitation of Liability Act;"[1]

   B.     Seacor Liftboats LLC ("Seacor Liftboats"), a Delaware limited liability company and a wholly-owned subsidiary of Seacor Marine Holdings Inc., also a Delaware corporation, is a foreign limited liability company, authorized to do and doing business within the jurisdiction of this Honorable Court, with its principal place  of business located at 5005 Railroad Avenue, Morgan City, Louisiana 70380;

   C.     Falcon Global Offshore II LLC ("Falcon"), a Delaware limited liability company and

___

[1]*See* Petition for Exoneration from or Limitation of Liability at ¶ 2 (Rec. Doc. 1).

a wholly-owned subsidiary of Seacor Marine Holdings Inc., also a Delaware corporation, claims to the owner of the L/B SEACOR POWER, has its principal place of business in Louisiana,[2] and is doing business within the jurisdiction of this Honorable Court; and

**D.**    Semco LLC ("Semco"), a Louisiana limited liability company authorized to do and doing business within the jurisdiction of this Honorable Court, with its principal place of business located at 186 Jean Lafitte Blvd., Lafitte, Louisiana 70360. Upon information and belief Semco designed and built the L/B SEACOR POWER.

## II. FEDERAL SUBJECT MATTER JURISDICTION

**3.**    Subject matter jurisdiction as to Claimant's original General Maritime Law Complaint for Damages in *Dwayne Lewis v. SEACOR Marine LLC, et al.*, No. 2:21-cv-01056-JTM-JVM (E.D. La.). is vested in this Honorable Court pursuant to 28 U.S.C. § 1333, more commonly known as "admiralty and maritime jurisdiction."

Subject matter jurisdiction as to the Petition for Exoneration from or Limitation of Liability is vested in this Honorable Court pursuant to 28 U.S. C. § 1331 because exoneration or limitation is sought under 46 U.S.C. § 30501, et seq., and pursuant to 28 U.S. C. 1333.

## III. PERSONAL JURISDICTION

**4.**    Seacor, Seacor Liftboats, Falcon Global Offshore II LLC and Semco, on a continuous basis, engaged in business and commerce within the Eastern District of Louisiana. All are subject to the general personal jurisdiction of this Honorable Court, and each has been or will have been served with Summons and a copy of the Complaint for Damages in accordance with

---

[2]Petition for Exoneration from or Limitation of Liability at ¶ 1 (Rec. Doc. 1).

Fed. R. Civ. P. 4(h)(1), and/or will have filed answers to this Complaint in Limitation.

## IV.  VENUE

5.    Venue is conferred by 28 U.S.C. § 1391(a)(2), because the Eastern District of Louisiana

is the judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred.

## V.  FACTS

6.    On Tuesday, April 13, 2021, Claimant was an independent consultant contracted to Chalmers,

Collins & Alwell, which in turn was contracted to Talos Energy, LLC ("Talos").  Plaintiff's

mission was to be the well site supervisor of cement pumping operations to be performed

aboard Talos' South 10-138 fixed platform near the mouth of the Mississippi River.

7.    The L/B SEACOR POWER, which was to transport Claimant to the fixed platform, was then

a vessel in navigation and commerce upon the waters of the Eastern District of Louisiana.

Upon information and belief, the vessel was built by Semco, owned and operated by Seacor,

and/or Seacor Liftboats,  and/or Falcon, and upon information and belief was time-chartered

to Talos.

8.    Despite numerous warnings of impending severe weather conditions developing, including

strong winds and increased wave action in the Gulf of Mexico, the L/B SEACOR POWER

was directed to leave Port Fourchon by its owners and operators, Seacor, and/or Seacor

Liftboats, and/or Falcon.  Despite this knowledge, the L/B SEACOR  POWER departed Port

Fourchon at approximately 12:30 p.m.

9.    On Tuesday, April  13,  2021, Claimant arrived at the Bollinger shipyard where the L/B

SEACOR POWER was docked, went aboard, and waited for a crew change.

10.   After the crew change, an orientation meeting was held with the Captain, the crew, and everyone onboard.  Relevant to this matter:

   A.   The locations of emergency exits for the vessel were not discussed;

   B.   The location of life jackets, in case of emergency, was described as "outside in boxes at a mid-ship location;"

   C.   There was no demonstration on how to put on a life jacket; and

   D.   There was no discussion about any other lifesaving equipment that was aboard the vessel.

11.   Once the orientation meeting was concluded, crane operations began to spot all of the equipment on the lift boat.  While it was Claimant's responsibility to ensure all equipment necessary for the Talos platform project has arrived and was positioned on the lift boat, it was not Claimant's responsibility to determine the positioning of the equipment on the lift boat's deck.  This equipment included, *inter alia*, a complete coiled tubing unit consisting of a control console, a power pack, a BOP rack, a coiled tubing reel, a tool box, various rental equipment including two fluid pumps, a return tank, a gas buster, and an iron rack.

12.   The equipment was spotted *but not was not secured* to the deck of the lift boat.

13.   Upon information and belief, Seacor, and/or Seacor Marine, and/or Falcon received weather site specific weather information and forecast reports including severe weather and squall notifications.

14.   Once loaded and jacked down, L/B SEACOR POWER departed Port Fourchon shortly after 12:30 o'clock p.m.  Claimant was assigned a port-side stateroom on the third deck, and after departure he went there to take a nap.

15.     At that time the seas were running approximately 2-to-3 feet, with no wind, and rain was starting. Thereafter, weather conditions drastically deteriorated, with winds rapidly increased to hurricane strength. The sea and wind conditions then exceeded the safe sea-keeping and maneuvering limits of the vessel.

16.     About 3:05 to 3:10 o'clock p.m., Claimant felt the boat roll over and he then jumped out of bed.

17.     The roll was around the vessel's fore and aft (*i.e.,* longitudinal) axis so that the vertical orientation of Claimant's stateroom changed. The ceiling became a wall, one wall became the floor, the floor became a wall, and the other wall was became the ceiling. The wall which faced the deck area remained the "forward wall" and while its window remained accessible to Claimant.

18.     At this time a vessel's mate, James Gracien ("Gracien"), whose stateroom was directly across the hallway, climbed into Claimant's stateroom. They determined to escape through the window, which then refused to open outward with only manual force. At that time Gracien spotted a fire extinguisher which the two men took turns using for many minutes to continuously beat on the window until it finally shattered.

19.     Claimant was terrified, and put on a life jacket immediately after the window was broken. At that moment he noticed that the life jacket did not have a light or signaling whistle.

20.     Mr. Gracien donned another life jacket, told Claimant "we need to get out now," and exited through the window.

21.     While the surface water level was still about three-to-four feet below the window sill, the strong wave action began pushing water through the window.

22.     The last thing Claimant wanted to do was jump into the water.  When he was a child his brother had drowned and his parents had thereafter never let him near water.  Consequently, Claimant could not swim.  So, he stayed in his stateroom as long as he could, getting tossed around the room, and getting bruised and battered.

23.     Finally, about 4:00 o'clock p.m., when the outside water level reached the window sill, Claimant knew he had to escape from the foundering vessel.  While trying to escape, a wave nearly pushed him back inside, then it sucked him down outside the vessel. When Claimant came back up he thought "Oh, my God what in the hell is going on here?"  This was something Claimant never wanted to do, never even dreamed of doing, and "Here I am in this water."

24.     At the time when Claimant escaped through his stateroom window, the seas were running ten to twelve feet.

22.     After Claimant escaped through the window, he felt a rope, grabbed it, and tried to hang on. There were about four or five other men - "I didn't know who they were, or what they had on, but they were hollering at me." Claimant looked to see who they were, but with the wave action  pushed water in his face so he couldn't determine who they were.  Eventually the rope slipped from Claimant's hands and he drifted away from the vessel.

23.     Claimant was adrift in the Gulf of Mexico, many miles offshore water, for about three to three four hours before he was rescued. Initially, one vessel turned toward him as he waived, but then that boat stopped about 50 yards away to rescue someone else and then turned away without seeing Claimant.

24.     Then, the crew of M/V MR. LLOYD spotted Claimant in the water and rescued him.

25.    Claimant endured a harrowing near death experience and now suffers from post-traumatic stress syndrome.  He fears he will never be able to work offshore again.

## VI.  CLAIMS UNDER THE GENERAL MARITIME LAW

26.    Seacor, and/or Seacor Liftboats, and/or Falcon, were responsible under the General Maritime Law for the safe operation of the L/B SEACOR POWER and in that regard owed a duty to Clamant.  The Petitioners were negligent in failing to carry out that duty.

27.    Semco were responsible under the General Maritime Law of product liability for the safe design and construction of the L/B/ SEACOR POWER and in that regard owed a duty to Claimant.  It was negligent in failing to carry out that duty.

28.    The "at sea" events which transpired on  April 13,  2021 were caused solely and exclusively by the negligence and fault, and willful and wanton misconduct of Seacor, and/or Seacor Liftboats, and/or Falcon in the following non-exclusive particulars:

A.    Failing to use reasonable care;

B.    Failing to adequately address the deteriorating and dangerous weather conditions in the area prior to instructing the L/B SEACOR POWER to leave port;

C.    Failing to follow the weather advisories and marine bulletins issued by the National Weather Service prior to instructing the L/B SEACOR POWER to leave port;

D.    Failing to provide proper and adequate equipment to the captain and his fellow crew members to properly perform their duties and/or properly navigate the L/B SEACOR POWER  during the deteriorating weather conditions;

E.    Failing to maintain the L/B SEACOR POWER and its appurtenances and/or equipment in a safe and reasonable state of repair;

**F.**     Failing to take reasonable precautions for the safety of the persons aboard the vessel, including Claimant;

**G.**     Failing to inspect and/or plan for potential hazards aboard the L/B SEACOR POWER;

**H.**     Failing to perform adequate safety meetings and analyses to identify and minimize the risk to persons aboard the L/B SEACOR POWER;

**I.**     Failing to assess the wind and sea state conditions prior to dispatching the L/B SEACOR POWER from port;

**J.**     Failing to have an emergency rescue plans and/or adequate and operable emergency survivor location and rescue appurtenances;

**K.**     Failing to adopt practices, policies, and procedures designed specifically to prevent the hardships, injuries, and damages sustained by the Claimant ; and

**L.**     Other negligent acts and/or omissions to be shown at the trial of this action.

**29.**     The other misconduct which preceded April  13,  2021 was the negligence and fault, and willful and wanton misconduct of Semco in the following non-exclusive particulars:

**A.**     Failing to design the L/B SEACOR  POWER so that it would remain stable and not capsize in rough weather;

**B.**      Failing to consider the use, purpose and weather conditions the L/B SEACOR POWER would encounter when designing, building and equipping it;

**C.**     Failing to design, build and equip the L/B SEACOR POWER so that it would  not capsize  when  encountering sea and wind conditions expected in the Gulf of Mexico; and

    **D.**      Such other acts of negligence and/or omissions as may be shown at the trial of this

matt

## VII.  VICARIOUS LIABILITY

**30.**    Seacor, Seacor Liftboats, and Falcon are vicariously liable for the actions and omissions of

their employees and agents that resulted in Claimant's ordeal at sea and his damages.

## VIII.  *RES IPSA LOQUITUR*

**31.**    Claimant affirmatively pleads the doctrine of *res ipsa loquitur* to the facts of the

capsize made the basis of this litigation.

## IX.  DAMAGES

**32.**    As a consequence of the negligence and willful and wanton misconduct of the Petitioners

and Semco, Claimant has suffered and will suffer damages which include but are not limited

to the following:

    **A.**      Severe past mental anguish, fear, and fright;

    **B.**      Past physical pain and suffering;

    **C.**      Future post-traumatic stress disorder and mental anguish;

    **D.**      Past and future economic losses; and

    **E.**      All other damages which may be proven at the trial of this matter or

discovered prior to trial.

## X.  PUNITIVE DAMAGES

**33.**    Claimant asserts a claim for punitive or exemplary damages against Seacor, and/or Seacor

Liftboats, and/or Falcon under the General Maritime Law because:

    **A.**      They acted with flagrant, reckless disregard for his life and safety;

**B.**     Seacor, and/or Seacor Liftboats, and/or Falcon subordinated the safety and lives of the persons aboard the L/B SEACOR POWER to their own pursuit of money profits; and

**C.**     They breached their duty to use reasonable care and prudence when ordering the L/B SEACOR POWER to leave the dock when they were warned that rough weather beyond the vessel's safe operating limits and sea-keeping ability was approaching.

34.     Claimant asserts a claim for punitive or exemplary damages against Semco under the General Maritime Law because:

**A.**     It failed to design, manufacture and construct the L/B SEACOR POWER so that it would remain stable and not capsize in rough weather and delivered it for service in that condition; and

**B.**     It failed to consider the expected weather conditions the L/B SEACOR POWER would encounter when designing, building and equipping the vessel.

## XI.  PRAYER FOR RELIEF

35.     **WHEREFOR,** the foregoing premises considered, Dwayne Lewis ("Claimant") prays:

**A.**     That Petitioners, Seacor Marine LLC, Seacor Liftboats LLC, and Falcon Global Offshore II LLC ("Petitioners") and Semco LLC, be served with copies this Answer, Affirmative Defenses, and Claim;

**B.**     That Petitioners, Seacor Marine LLC, Seacor Liftboats LLC, and Falcon Global Offshore II LLC ("Petitioners") and Semco LLC, serve their Answers thereto;

**C.**     That after all due proceedings had, there be a final Judgment holding Seacor Marine LLC, and/or Seacor Liftboats LLC, and/or Falcon Global Offshore II LLC

("Petitioners") and/or Semco LLC liable to Claimant, jointly, severally, and *in solido,* in money general damages reasonable under these premises;

D.      That after all due proceedings had, there be a final Judgment holding Seacor Marine LLC, and/or Seacor Liftboats LLC, and/or Falcon Global Offshore II LLC ("Petitioners") and/or Semco LLC liable to Claimant, jointly, severally, and *in solido,* in punitive money damages reasonable under these premises;

E.      For an award of legal interest from the date of judicial demand until all general and/or punitive money damages awarded are fully paid;

F.      For an award of all costs allowed by Fed. R. Civ. P. 54(b) and 28 U.S.C. § 1920; and

G.      For all general and equitable relief to which Claimant may be entitled.

Respectfully submitted,

*/s/ Richard M. Martin, Jr.*
RICHARD M. MARTIN, JR., T.A. (#08998)
FRANK E. LAMOTHE, III (#07495)
**LAMOTHE LAW FIRM, LLC**
400 Poydras Street, Suite 1760
New Orleans, LA 70130
Telephone: (504) 704-1414
E-Mail: felamothe@lamothefirm.com
             rmartin@lamothefirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has this day been forwarded to all counsel of record to this proceeding by electronic transmission, facsimile and/or by depositing same in the United States Postal Service, properly addressed and postage prepaid, this 15th day of June, 2021.

*/s/ Richard M. Martin, Jr.*
RICHARD M. MARTIN JR

Page 21 of  22