## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF FALCON GLOBAL | * | CIVIL ACTION NO. 21-1062 |
| OFFSHORE II LLC, AS OWNER, | * | |
| SEACOR MARINE LLC AS | * | |
| MANAGER/OPERATOR, AND SEACOR | * | SECTION H(1) |
| LIFTBOATS LLC, AS ALLEGED | * | |
| OWNER/OPERATOR OF THE | * | |
| SEACOR POWER PETITIONING | * | JUDGE MILAZZO |
| FOR EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | MAG. VAN MEERVELD |
| *    *    *    *    *    *    *    * | | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

For nearly a century, the well-established rule of *Robins Dry Dock & Repair Co. v. Flint* has been consistently applied by courts at all levels to preclude recovery of alleged economic losses unless such losses are directly related to physical damage to property in which the claimant has a proprietary interest.[1] This case involves just such a claim. Various Cox entities assert a claim for economic loss in the form of deferred production of oil from fields in the Gulf of Mexico allegedly resulting from damage to a pipeline caused by the liftboat SEACOR POWER when it capsized and sank in April, 2021.[2] That economic loss claim, however, is asserted by parties who did not own or otherwise have a proprietary interest in the damaged pipeline and the party that did own the pipeline has not suffered any economic loss. Consequently, Cox's economic loss claim cannot clear the *Robins Dry Dock* hurdle and must be dismissed.[3]

---

[1] 275 U.S. 303 (1927).

[2] Collectively referred to as "Cox" or the "Cox Claimants," the relevant parties are Cox Operating, LLC, Energy XXI Gulf Coast, Inc., and Energy XXI Pipeline LLC. *See* Rec. Doc. 217.

[3] To be clear, Limitation Petitioners do not seek dismissal of the physical damage claim, only the economic loss claim.

1

## FACTUAL BACKGROUND

This Court is well familiar with the facts underlying this litigation arising out of the tragic capsizing of SEACOR POWER in unexpected, extremely rough weather off the coast of Louisiana on April 13, 2021.  Limitation Petitioners will not unnecessarily repeat those facts here.  Regarding Cox's claim, Cox alleges that various of its related companies were the owners and/or operators of a subsea pipeline, designated as PSN #4305 (the "Pipeline") and running from a location south of the accident site to certain processing facilities located on shore.  The Pipeline was damaged when the vessel sank.  The Pipeline serviced a single platform located in South Timbalier block 27, about 1.5 to 2 miles from where SEACOR POWER sank.[4]

In addition to a claim for the physical damage to the pipeline, Cox alleges that it has sustained approximately $2.6 million of what it characterizes as "delay damages" during the period the Pipeline was inoperable.  These delay damages are calculated as deferred production damages, meaning that the oil in question was not forever lost or physically damaged as a result of the Pipeline incident, only that it was produced and sold on a deferred or delayed basis.  In other words, there is no claim of physical damage to the sub-surface oil that one or more of the Cox entities was entitled to produce.  The only physical damage was to the Pipeline itself.  Because the entity that had the right to produce and sell the oil transported through the Pipeline did not have an ownership (or otherwise proprietary) interest in the pipeline, no Cox entity can recover any alleged economic losses however they are characterized (but certainly including "delay" damages) under the rule of

---

[4] At the time of the casualty the Pipeline was not in service and had not been since October of 2020 as a result of damage to various integrated facilities caused by Hurricane Zeta.  For purposes of this motion, the Court need not address the contradiction inherent in Cox's claim for delay damages for a pipeline that had not carried product for over five months before the accident.

*Robins Dry Dock.*   Partial summary judgment dismissing that aspect of the Cox claim is therefore in order.

## LAW AND ARGUMENT

### I.      Legal Standard

The Federal Rules of Civil Procedure mandate the entry of summary judgment where "no genuine dispute as to any material fact" exists and "the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact.[5]  "'[T]he burden [then] shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial.'  Summary judgment is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"[6]

### II.     Cox Operating and Energy Gulf Coast Cannot Recover Damages for Deferred Production Because They Did Not Sustain Physical Damage to a Proprietary Interest

Two of the three Cox Claimants, Cox Operating and Energy XXI Gulf Coast, cannot recover on their claim for deferred production because neither had a proprietary interest in the damaged Pipeline, which was solely owned by the third Cox Claimant, Energy XXI Pipeline.  In *Robins Dry Dock & Repair Co. v. Flint*, the United States Supreme Court held that there can be no recovery for economic loss absent physical injury to a proprietary interest.[7]  In *State of La. ex rel. Guste v. M/V TESTBANK*, the Fifth Circuit re-affirmed its continued adherence to the rule of

---

[5] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

[6] *Williams v. Williams*, No. 16-794, 2017 WL 636320, at *1 (E.D. La. Feb. 16, 2017) (quoting *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995)).

[7] *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927).

*Robins Dry Dock*, which the court described as a "widely used and necessary limitation on recovery for economic losses."[8]

Following *Testbank*, the Fifth Circuit and district courts have continued the rigid application of the rule of *Robins Dry Dock* that "'physical damage to a proprietary interest" is a 'prerequisite to recovery for economic loss' in cases of unintentional maritime torts."[9]  For example, in *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, an allision between the defendant's vessel and a platform owned by plaintiff Corpus Christi caused physical damage to a gas riser, which was connected to the platform and owned by Houston Pipeline Company.[10] Corpus Christi was unable to produce and sell gas during the period that Houston's riser underwent repairs, during which time Corpus Christi flared gas to prevent damage to its wells.[11]

While the Fifth Circuit found that the Corpus Christi's flaring of gas constituted physical damage to its property, the court held that this physical damage did not permit recovery of economic damages for deferred production during the period in which Houston repaired its riser.[12] Because the alleged economic loss for deferred production resulted from the damage to the riser, rather than to any property that Corpus Christi owned, the court held that Corpus Christi could not recover on its claim for deferred production.[13]  In so holding, the court specifically noted that

---

[8] *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1027 (5th Cir. 1985).

[9] *Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, 497 F. Supp. 2d 787, 791 (E.D. La. 2007) (quoting *Testbank*, 752 F.2d at 1020); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit.")

[10] *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 199 (5th Cir. 1995).

[11] *Id.* at 200.

[12] *Id.* at 202.

[13] *Id.*

PD.41754867.1

"simply meeting the requirement of showing physical damage to a proprietary interest does not automatically open the door to all foreseeable economic consequences."[14]

Here, there is no dispute that Cox Operating and Energy XXI Gulf Coast did not sustain physical damage to any property that they own.  In response to an Interrogatory that requested Cox identify with particularity all of the property that sustained damage in the incident and the owner of such property, Cox identified only "the Pipeline, which is owned by Energy XXI Pipeline, LLC."[15]  In those same discovery responses, Cox further conceded that "to the extent any products were present within the Pipeline at the time of the Incident, those products would have been owned by EPL Oil & Gas, LLC and/or Energy XXI GOM, LLC."[16]

The recent corporate deposition of the Cox Claimants further confirmed and clarified these facts.  Specifically, Cox's corporate representative, Ben Marchive, confirmed that neither Cox Operating nor Energy XXI Gulf Coast own any offshore assets whatsoever.[17]  Rather, Energy XXI Pipeline owns the Pipeline, which is the only property that Cox alleges sustained physical damage due to the accident.[18]  At the time of the Incident, the sole purpose of the Pipeline was to bring oil from the South Timbalier 27 D/E platform to shore for sale.[19]  Mr. Marchive further confirmed that EPL Oil & Gas, LLC ("EPL"), rather than any of the Cox Claimants, owns the oil wells and

---

[14] *Id.* at 203; *see also Texas E. Transmission Corp. v. McMoRan Offshore Expl. Co.*, 877 F.2d 1214, 1223 (5th Cir. 1989) (denying recovery for deferred production resulting from damage to a pipeline in which the plaintiff possessed no proprietary interest).

[15] Exhibit 1, Cox Claimants' Supplemental and Amended Answers to Limitation Petitioners' First Set of Interrogatories and Requests for Production of Documents, p. 6.

[16] *Id.* at p. 7.

[17] Exhibit 2, Excerpts of the Corporate Deposition of the Cox Claimants through Corporate Representative Ben Marchive, 286:5-7 (confirming that Cox Operating owns no offshore assets); *Id.* at 297:25-298:8 (confirming that Energy XXI Gulf Coast owns no offshore assets).

[18] *Id.* at 310:17-25.

[19] *Id.* at 283:2-8.

associated platforms.[20]   Thus, under the clear rule of *Robins Dry Dock*, neither Cox Operating nor Energy XXI Gulf Coast can assert their claim for economic damages for deferred production because, by their own admission, they sustained no physical damage to property that they own.

Likewise, neither Cox Operating nor Energy XXI Gulf Coast can demonstrate that they otherwise possess a "proprietary" interest in the Pipeline sufficient to permit recovery of purely economic damages.   In *Plains Pipeline, L.P. v. Great Lakes Dredge & Dock Co.*, plaintiff, Phillips66 Pipeline, LLC  sought damages for the expenses it incurred to transport its oil after the defendant's dredging equipment struck and damaged a pipeline owned by a separate plaintiff, Plains Pipeline, L.P.[21]   Although Phillips conceded that it did not own the damaged pipeline, it sought to avoid the *Robins Dry Dock* rule by arguing that the Service and Operating Agreement between itself and Plains created in Phillips the requisite proprietary interest.[22]   Specifically, the agreements provided Phillips with the sole right of use of the pipeline and required Phillips to reimburse Plains for the pipeline's maintenance and repair.[23]   This is very similar to the contractual relationship between the various Cox entities in this case.

The court dismissed Phillips' claims for economic damages on summary judgment, finding that Phillips' alleged rights and obligations under the operating agreements did not constitute a proprietary interest in the pipeline for purposes of recovering economic damages under *Robins Dry Dock*.[24]   The court noted that regardless of whether Phillips' sole use of the pipeline and

---

[20] *Id.* at 305:7-20.  EPL is not a claimant in this case.  However, as demonstrated herein, EPL's absence from the case is irrelevant because, even if it were a claimant, it could not assert an economic loss claim because it sustained no property damaged in the incident.

[21] *Plains Pipeline, L.P. v. Great Lakes Dredge & Dock Co.*, 46 F. Supp.3d 632, 634 (E.D. La. 2014), *aff'd*, 620 F. App'x 281 (5th Cir. 2015).

[22] *Id.* at 635.

[23] *Id.* at 638.

[24] *Id.* at 639.

obligation to reimburse payments for maintenance and repair created a property interest of some kind in the pipeline, "any 'property interest created by virtue of its contract with [Plains] form[s] too slender a reed upon which to base a right of recovery despite *Robins*.'"[25]

Any interest that Cox Operating and Energy XXI Gulf Coast may claim in the Pipeline is even more attenuated than that of the dismissed plaintiff in *Plains Pipeline*. As stated above, neither Cox Operating nor Energy XXI Gulf Coast has any ownership interest in the Pipeline or the oil transported through the Pipeline. Because Cox Operating and Energy XXI Gulf Coast cannot demonstrate that they sustained physical damage to a proprietary interest, *Robins Dry Dock* bars their recovery for any alleged economic damages for deferred production. Accordingly, Petitioners are entitled to summary judgment with respect to that claim.

### III.   Energy XXI Pipeline Has No Claim for Deferred Production Damages

Though for purposes of this motion, Limitation Petitioners accept that Energy XXI Pipeline is the owner of the damaged Pipeline, it nevertheless also cannot recover damages for deferred production. That is because it did not wn the oil transported through the Pipeline (the production of which being the thing that was "delayed" or "deferred") and does not have any claim of entitlement to the proceeds from the sale of that oil. In other words, and to state the obvious, damages for the deferred production and sale of oil can only be asserted by a party who owned the oil and which would be entitled to payment when it is sold in the market. Energy XXI Pipeline, though it owns the Pipeline in question, does not own the oil production that was allegedly deferred. As such, it has not sustained any economic loss for delayed or deferred production. In fact, Cox has admitted through its discovery responses and the testimony of its corporate

---

[25] *Id.* (quoting *Louisville & N. R. Co. v. M/V Bayou Lacombe*, 597 F.2d 469, 473–74 (5th Cir. 1979)).

PD.41754867.1

representative, Ben Marchive, that **none** of the Cox Claimants owns the oil that is the subject of the deferred production claim.  Rather, EPL, which is not a claimant, owns the oil wells from which production allegedly could not occur following the accident.

Marchive testified that none of the Cox Claimants obtain ownership of the oil at any point in the production process, and they do not have any right whatsoever to the proceeds from the sale of that oil:

> Q. …[O]wnership does not transfer from EPL Oil & Gas to another Cox entity before it gets sold; is that right?
>
> A. That's correct.[26]
> …
>
> Q. And so what you had told me was that the oil is owned by EPL Oil & Gas, LLC, when it comes out of the ground and it's put into the pipeline, and that [CIMA] handles the marketing and sale of that oil, correct?
>
> A. That's correct.
>
> Q. And so when a third-party customer, whoever buys that oil, pays for it, they pay [CIMA]; is that correct?
>
> A. That's correct.
>
> Q. And then [CIMA] remits that money to—you said to Cox Operating, LLC?
>
> A. Correct.
>
> Q. And then Cox Operating remits that money back to the well owners; is that right?
>
> A. It is an accounting function, so it's—at that point it is a receivable by whichever company produced the oil.
>
> Q. Got it. I understand. So Cox is processing the payments as they come in, but they're for the account of the well owner?
>
> A. Correct.
>
> Q. Which in this case is EPL Oil & Gas, LLC?

---

[26] Exhibit 2, at 315:5-8.

A. That's correct.[27]

As Marchive's testimony demonstrates, Cox Operating has no claim of ownership to the oil, either when it is in the ground or in the Pipeline, and it has no entitlement to the proceeds from the sale of that oil.  Cox is simply a conduit for payments to EPL from the purchaser of the oil.  As such, neither Cox Operating nor any other Cox Claimant has a claim for damages related to the deferred production of oil because none of these entities had any ownership interest in the oil in the first place.  The only party that may have sustained any damages related to deferred production in this matter is EPL.  However, not only is EPL not a party to this case, but EPL also did not own the Pipeline or otherwise sustain physical damage to any proprietary interest as a result of the accident.  Therefore, even if EPL were a party to this litigation, *Robins Dry Dock* would bar its recovery for deferred production.

Thus, even accepting as true Cox's claims that oil production was deferred due to the accident, none of the Cox Claimants can oversome the rule of *Robins Dry Dock* barring recovery of purely economic damages in the absence of physical damage to property in which the Cox Claimants had a proprietary interest.  Accordingly, Petitioners are entitled to summary judgment in their favor, dismissing all of the Cox claims for deferred production.

## **CONCLUSION**

The rule of *Robins Dry Dock* has stood the test of time and has been widely and consistently applied by this Court and the Fifth Circuit.  In fact, it has been applied in a summary fashion in many pipeline damage cases in this Circuit, making it clear that Limitation Petitioners are entitled

---

[27] Exhibit 2, at 317:1-25.

to the relief they seek in this case—dismissal of the delay damage claim asserted by the Cox Claimants.

Respectfully submitted,

PHELPS DUNBAR LLP

BY:   */s/ Arthur R. Kraatz*
      Gary A. Hemphill T.A. (#6768)
      Arthur R. Kraatz (#35194)
      Canal Place
      365 Canal Street, Suite 2000
      New Orleans, LA 70130-6534
      Phone: (504) 566-1311
      Facsimile: (504) 568-9130
      Email: gary.hemphill@phelps.com
              arthur.kraatz@phelps.com

AND

MURPHY, ROGERS, SLOSS,
 GAMBEL & TOMPKINS

*/s/ Peter B. Tompkins*

Peter B. Tompkins, T.A. (#17832)
ptompkins@mrsnola.com
Peter B. Sloss (#17142)
psloss@mrsnola.com
Timothy D. DePaula (#31699)
tdepaula@mrsnola.com
Tarryn E. Walsh (#36072)
Twalsh@mrsnola.com
701 Poydras Street
Suite 400, Hancock Whitney Center
New Orleans, LA 70139
Telephone: (504) 523-0400
Fax: (504) 523-5574

*Attorneys for Falcon Global Offshore II LLC, SEACOR Marine LLC, and SEACOR Liftboats LLC*