UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF FALCON GLOBAL OFFSHORE II LLC, AS OWNER, SEACOR MARINE LLC AS MANAGER/OPERATOR, AND SEACOR LIFTBOATS, LLC, AS ALLEGED OWNER OPERATOR OF THE SEACOR POWER PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION NO. 2:21-cv-01062 <br><br> SECTION: "H(1)" <br><br> JUDGE MILAZZO <br><br> MAGISTRATE JUDGE VAN MEERVELD |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COX'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SUBSEQUENT EVENTS AND INSURANCE

Claimants Energy XXI Pipeline, LLC, Cox Operating, L.L.C., and Energy XXI Gulf Coast, Inc. (collectively, "Cox") respectfully submit this memorandum in support of their *Motion in Limine to Exclude Evidence of Subsequent Events and Insurance*.

**I.     INTRODUCTION**

In this action, Cox asserts a claim against Falcon Global Offshore II LLC, SEACOR Marine LLC, and SEACOR Liftboats LLC (collectively, the "Limitation Petitioners") for damage to an oil pipeline on the Outer Continental Shelf in Block 22 South Timbalier Area of the Gulf of Mexico and designated as PSN #4305 (the "Pipeline").  R. Doc. 217 (Cox's 1st Supp. & Am. Ans. & Claim).  Cox alleges that, on or about April 13, 2021, the Pipeline was damaged when the SEACOR POWER capsized due to its unseaworthiness and/or the culpable acts or omissions of the Limitation Petitioners. R. Doc. 217 at ¶ 3.1 *et seq*.

Currently, a bench trial on Cox's damages only is set to begin on June 12, 2023. R. Doc. 530.  The trial on liability and limitation of liability was continued and is currently without

- 2 -

a date. *Id.* Under the Court's Scheduling Order, any motions *in limine* are due by April 28, 2023. R. Doc. 159-1 at 2.

Based on their discovery and expert reports, Cox anticipates that Limitation Petitioners may try to introduce argument or evidence regarding (1) events that occurred after the April 13, 2021 capsizing of the SEACOR POWER, which the Limitation Petitioners contend are superseding causes that reduce their liability for damages to Cox's Pipeline; or (2) Cox's insurance coverage, claims, or proceeds relating to the Pipeline. Such argument or evidence should be prohibited by the Court because it is irrelevant and inadmissible.

One component of Cox's damages are "delay" damages: the production of hydrocarbons was delayed as a result of damage to the Pipeline caused by the SEACOR POWER, resulting in economic damages from deferred production while there was no way to transport oil for sale. Both sides' experts have submitted reports estimating delay damages based on the duration of the delay, the time value of money, and other factors. Based on the Limitation Petitioners' discovery and expert reports, Cox anticipates they will contend that they cannot be held responsible for delays caused by subsequent events, including a Coast Guard directive that prohibited Cox from repairing the Pipeline, Hurricane Ida, and damage caused by another vessel, the D/B EPIC HEDRON (the "HEDRON"). Under applicable law, however, those subsequent events are not "superseding causes" that relieve the Limitation Petitioners of responsibility for delay damages, and they are responsible for all delays traceable to the SEACOR POWER incident.

With respect to insurance, Cox had no coverage for damage to the Pipeline caused by the SEACOR POWER. Cox had insurance for property damage caused by hurricanes, and made a claim for damage caused by Hurricane Ida in August of 2021. In this case, Cox is not seeking to recover for damage caused by Hurricane Ida. Even if Cox had insurance for damage

4296412v.1

caused by the SEACOR POWER (it did not), insurance evidence is inadmissible under the collateral source rule. The Limitation Petitioners do not get the benefit of insurance that was paid for by Cox, and are responsible for all damages caused by the SEACOR POWER incident.

## II.     ARGUMENT AND AUTHORITIES

### A.     The Limitation Petitioners Should be Prohibited from Offering Evidence that Subsequent Events Caused Delays for Which They are not Responsible.

Cox anticipates the Limitation Petitioners may point to events subsequent to the SEACOR POWER incident as intervening causes of Cox's delay damages, for which they are not responsible. For the reasons explained below, the Court should exclude evidence or argument.

#### 1.     Cox was Unable to Repair the Pipeline Because of the SEACOR POWER's Wreckage.

Cox's claim is based on damage to the Pipeline caused by the capsizing of the SEACOR POWER on or about April 13, 2021. The Limitation Petitioners have admitted the SEACOR POWER struck and damaged the Pipeline.[1]

After part of the SEACOR POWER's wreckage came to rest on top of the southern portion of the Pipeline, Cox had to wait until the debris was removed before it could access the pipeline to begin repairs.[2] Under the Wreck Removal Act, 33 U.S.C. § 409, a vessel's owners – here, the Limitation Petitioners – are responsible for removing debris that endangers navigation. It was estimated that it would take a "couple of months" before the debris could be cleared.[3] Due to the Coast Guard's control of the area and ongoing salvage efforts, Cox could not begin repairing

---

[1] The Limitation Petitioners admitted Cox's Request for Admission No. 1, which asked them to admit that "the SEACOR POWER struck and damaged the Cox Pipeline [PSN #4305] on April 13, 2021."
[2] *See* Cox. Corp. Dep. of Rodney Dykes ("Dykes Dep.) 140:10-142:4, 144:7-11, March 29, 2023 (excerpts attached hereto as Ex. 1).
[3] Dykes Dep. 144:1-6, 152:10-23.

4296412v.1

the Pipeline until that that work was completed.[4]  It took longer than expected to clear the debris. By late August 2021, debris removal efforts were ongoing, and repairs could still not be started.

On August 29, 2021, Hurricane Ida was in the Gulf of Mexico.  The storm caused the SEACOR POWER's wreckage to become more deeply buried on top of and adjacent to the Pipeline.  That made it impractical to safely remove the wreckage or repair the Pipeline.  As a result, after Hurricane Ida, the Coast Guard decided that the SEACOR POWER debris would be left where it was (on top of the pipeline), and that Cox should cap and bury that portion of the pipeline, taking it permanently out of service.[5]  Instead of repairing the Pipeline, Cox was forced to build a new, rerouted pipeline.  That entails more time and expense than repairing the existing Pipeline.

Hurricane Ida had also pulled the HEDRON from its moorings and caused it to drift through the Gulf while dragging its anchors.  The dragging anchors damaged multiple pipelines, including pipelines owned and operated by Chevron, Arena Energy, and Cox or its affiliates.  The northern end of the Pipeline was severed (the SEACOR POWER wreckage was on the southern end).  A separate limitation action was filed by the HEDRON's owners in this Court (the "Hedron Action"),[6] and multiple claimants including Cox affiliates filed claims in that case.[7]

Because the Coast Guard determined that the SEACOR POWER's wreckage could not be removed from the Pipeline, Cox had to build a new, rerouted pipeline.  Accordingly, Cox's delay damages claim is based on the time it will take to build a new pipeline (rather than the shorter time it would have taken to repair the existing Pipeline).  At trial, Cox anticipates the Limitation

---

[4]  Dykes Dep. 26:4-21.
[5]  Dykes Dep. 171:6-22, 202:11-203:10.
[6]  *In re Hedron Holdings, LLC, as Owner, and Triton Diving Services, LLC, as Bareboat Charters and Owner Pro Hac Vice of D/B EPIC HEDRON Petitioning for Exoneration From and/or Limitation of Liability*, No. 2:22-cv-00205, E.D. La.
[7]  R. Doc. 23 (Hedron Action) at ¶ 3.1 *et seq.*

Petitioners may argue that the Coast Guard directives regarding the Pipeline, Hurricane Ida, or the HEDRON was a "superseding cause" that limits their liability for Cox's damages in this action. For the reasons set out below, none of those events qualifies as a superseding cause.

### 2. The Superseding Cause Doctrine.

The superseding cause doctrine is related to the concept of proximate causation. *See Tidewater Marine, Inc. v. Sanco Int'l, Inc.*, 113 F. Supp. 2d 987, 998 (E.D. La. 2000). The doctrine applies "when a defendant's negligence substantially contributes to the plaintiff's injury in fact, but the injury was actually brought about by a later cause of independent origin ***that was not foreseeable***." *Id.* (quoting *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996)) (emphasis added). The doctrine "asks whether a defendant is to be held liable for an injury to which he has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which he is not responsible." *Id.* (quoting *Nunley v. M/V DAUNTLESS COLOCOTRONIS*, 727 F.2d 455, 464 (5th Cir. 1984)).

The Fifth Circuit has held that an intervening negligent act is ***not*** a superseding cause if one of the following factors is present: "(a) the [original] actor at the time of his negligent conduct should have realized that a third person might so act," (b) a reasonable man knowing the situation would not regard the third person's actions as "highly extraordinary," or (c) "the intervening act is a normal consequence of a situation created by the [original] actor's conduct and the manner in which it is done is not extraordinarily negligent." *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 652 (5th Cir. 1992) (quoting *Nunley*, 727 F.2d at 464-65). Thus, in order for a third party's negligence to absolve the original wrongdoer of liability, "the subsequent negligence of the third party must be so extraordinary that a reasonably prudent person could not have foreseen its occurrence." *Tidewater Marine*, 113 F. Supp. 2d at 999.

### 3. Coast Guard Directives that Prevented Cox from Repairing the Pipeline are not Superseding Causes.

Here, the Coast Guard directives are not a superseding cause because they were a foreseeable result of the SEACOR POWER incident.  The federal government, of which the Coast Guard is a part, indisputably has jurisdiction over the Outer Continental Shelf ("OCS"), where the wreckage and Pipeline are located.  *See* 43 U.S.C. § 1332(1) (providing that the subsoil and seabed of the outer continental shelf belong to the United States and "are subject to its jurisdiction, control, and power of disposition.").  And, the federal Wreck Removal Act made the Limitation Petitioners responsible for removing the wreckage.  33 U.S.C. § 409.

After the SEACOR POWER event, it was foreseeable that federal authorities would decide whether and when wreckage lying on a pipeline on the OCS could be repaired.  *Cf*. Restatement (Second) of Torts § 447(a) (third person's intervening act is not a superseding cause if defendant "should have realized that a third person might so act").[8]  The need for the Coast Guard to make such decisions was a "normal consequence of a situation created by the [original] actor's conduct," and its decisions are thus not a superseding cause.  *Cf. id*. § 447(c) (third person's act is not a superseding cause where it "is a normal consequence of a situation created by the [original] actor's conduct and the manner in which it is done is not extraordinarily negligent").[9]

---

[8] This Restatement section is concerned with negligent acts of third parties, and the Coast Guard was *not* negligent.  Nonetheless, if a tortfeasor is not relieved of liability where he "should have realized" that a third person would take a *negligent* action, he certainly should not be relieved of liability if he "should have realized" that a third person would take a *non-negligent* action.

[9] *See* preceding note.  If a tortfeasor is not relieved of liability by a third person's *negligent* response to "a situation created by the [original] actor's conduct," then he certainly should not be relieved of liability by a third person's *non-negligent* response to a situation he created.

### 4. The Limitation Petitioners are Responsible for Additional Delays Caused by Hurricane Ida.

Due to the procedural posture of this limitation proceeding, the Limitation Petitioners were not required to (and did not) file an answer and affirmative defense to Cox's claim. Nonetheless, to the extent Hurricane Ida is raised by the Limitation Petitioners to limit its liability, it is akin to an "act of God" affirmative defense for which they have the burden of proof.

"[A]n act of God is defined as any accident, due directly ***and exclusively to natural causes without human intervention***, which by no amount of foresight, pains, or care, reasonably to have been expected, could have been prevented." *Union Pac. R. Co. v. Heartland Barge Mgmt., LLC*, Nos. 02-0438 & 02-2314, 2006 WL 2850064, at *13 (S.D. Tex. Oct. 3, 2006) (emphasis added) (quoting *Brown v. Sandals Resorts Int'l,* 284 F.3d 949, 954 (8th Cir. 2002)). "A casualty cannot be considered an Act of God ***if it results from – or is contributed to by – human agency,*** and that which may be prevented is not an Act of God or vis major." *Am. Riv. Transp. Co., Inc. v. Paragron Mar. Svcs., Inc*., 213 F. Supp. 2d 1035, 1060 (E.D. Mo. 2002) (emphasis added). In assessing an act of God defense, courts consider several factors, including "the reasonable predictability of the natural occurrence," and whether there was "lack of human agency in the damage to the property." *Id*. (citing *Inspat Inland, Inc. v. Am. Comm. Barge Line Co.,* No. 2:99 CV 58, 2002 WL 32098290, at *8 (N.D. Ind. 2002 Sept. 30, 2002).

Here, Hurricane Ida does not support an act of God defense because the storm, ***acting alone***, did not prevent Cox from repairing the Pipeline. Instead, Cox could not repair the Pipeline because the hurricane caused debris from the SEACOR POWER lying on the Pipeline to be buried.[10] If the wreckage had not been lying on the Pipeline, there would have been nothing

---

[10] Dykes Dep. 171:6-22, 202:11-203:10.

for the hurricane to bury, and the Pipeline could have been repaired. Instead, because of the hurricane-buried debris, Cox had to build a new Pipeline and incur additional delay damages.

When a moving vessel allides with a stationary object, the moving vessel is presumed to be at fault. *THE OREGON*, 158 U.S. 186, 192-93 (1895); *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1471 (5th Cir. 1991). Here, the SEACOR POWER was a moving vessel, and the Pipeline was stationary. The SEACOR POWER was thus presumptively at fault for the April 2021 allision that resulted in the vessel's wreckage lying on the Pipeline, where it would later be buried in August of 2021.

By burying SEACOR POWER debris, Hurricane Ida increased the time it would take Cox to restore the ability to transport oil for sale. But, that additional delay was not caused exclusively by the storm, but rather by its combining with the SEACOR POWER debris. Because the additional delay was not caused solely by the storm, an act of God defense is unavailable. *See Union Pac.*, 2006 WL 2850064, at *13 (defense only available where accident was due "exclusively to natural causes"); *Am. Riv. Transp. Co.,* 213 F. Supp. 2d at 1060 (defense requires lack of human agency).

Hurricane Ida also does not relieve the Limitation Petitioners of liability under the Restatement (Second) of Torts approach:

> An intervening operation of a force of nature without which the other's harm would not have resulted from the actor's negligent conduct prevents the actor from being liable for the harm, ***if***
>
> (a) the operation of the force of nature is extraordinary, ***and***
>
> (b) the harm resulting from it is of a kind different from that the likelihood of which made the actor's conduct negligent.

Restatement (Second) of Torts § 451 (emphases added). Here, the Limitation Petitioners cannot satisfy either condition for being relieved of liability. First, a hurricane in the Gulf of Mexico

during peak hurricane season is not "extraordinary." *Cf. id*. at Reporter's Note (discussing *Bell Lumber Co. v. Bayfield Transfer R. Co.*, 172 N.W. 955 (1919), in which a carrier who delayed transporting lumber was liable for lumber lost in a forest fire, at a time of year when there was a "peculiar danger" of forest fires in the area). And, the "kind" of harm that resulted from Hurricane Ida was a delay in Cox's ability to transport and sell oil – the same kind of harm that resulted from the SEACOR POWER debris landing on the Pipeline.

For the foregoing reasons, the Limitation Petitioners cannot try to reduce their liability for delay damages by pointing to Hurricane Ida.

### 5. The HEDRON is not a Superseding Cause.

Finally, the HEDRON is also not a superseding cause for two reasons. First, even if the HEDRON's owners' negligence caused it to drift through the Gulf and damage pipelines with its dragging anchors, that does not get the Limitation Petitioners off the hook. The Fifth Circuit has explained that a third party's intervening negligent act is ***not*** a superseding cause unless a reasonable person would consider the third party's intervening act to be "highly extraordinary." *Donaghey*, 974 F.2d at 652. Here, the HEDRON's owners' act of mooring the vessel at Port Fourchon in anticipation of Ida, even if that was negligently done, was hardly "highly extraordinary."

In addition, damage to the northern end of the Pipeline caused by the HEDRON is also irrelevant because, even if the northern end were undamaged, Cox could still not have repaired the Pipeline because SEACOR POWER debris was buried on its southern end and had to be left in place, forcing the construction of a new Pipeline.[11] Regardless of whether the northern end of the pipeline was damaged or pristine, Cox had to build a new pipeline.

---

[11] Dykes Dep. 171:6-22, 202:11-203:10.

For these reasons, the HEDRON is not a superseding cause that reduces the Limitation Petitioners' liability for delay damages.

B. **The Limitation Petitioners Should be Prohibited from Offering Evidence of Insurance.**

As discussed above, the HEDRON damaged multiple pipelines as it drifted through the Gulf of Mexico while dragging its anchors. This included pipelines owned by Chevron, Arena Energy, and Cox or its affiliates, including the northern part of the Pipeline (SEACOR POWER debris was lying on the Pipeline's southern end). Other infrastructure owned by Cox or its affiliates was damaged as well.

While Cox had no insurance for damage caused by the SEACOR POWER, it did have insurance for hurricane-caused property damage, for which it paid premiums. In addition to damage relating to Hurricane Ida in August 2021, assets in the Gulf of Mexico owned by Cox or its affiliates had suffered extensive damage from the record-breaking 2020 hurricane season (including Hurricane Zeta). Cox made a comprehensive insurance claim for damage to various assets (of which the Pipeline was one of many), caused by multiple storms, including Hurricane Ida. Cox received insurance proceeds on its claim.

Based on the Limitation Petitioners' discovery and expert reports, Cox expects that they will seek to reduce the damages for which they are liable by pointing to Cox's insurance coverage, claims, or proceeds. The Court should prohibit the Limitation Petitioners from offering evidence or argument of Cox's insurance. Cox did *not* have insurance for the SEACOR POWER event. While Cox had insurance for hurricane-related damage, it is not making a claim for hurricane damage in this case. Even if Cox had insurance for damage caused by the SEACOR POWER, insurance evidence is inadmissible under the collateral source rule.

"The collateral source rule bars a tortfeasor from reducing the damages it owes to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor." *Stephens v. Fla. Marine Transporters, Inc.*, No. CIV-A-12-1873, 2013 WL 5236624, at *1 (E.D. La. Sept. 16, 2013) (Milazzo, J.) (quoting *Davis v. Odeco, Inc.*, 28 F.3d 1237, 1243 (5th Cir. 1994)). "Married to this substantive rule is an evidentiary rule that proscribes introduction of evidence of collateral benefits." *Id.* (quoting *Davis*, 18 F.3d at 1243). Insurance proceeds funded by a plaintiff clearly fall within the scope of the rule. *Id.* (quoting *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 305 (5th Cir. 2008).

Nor can the Limitation Petitioners try to get around the inadmissibility of insurance by suggesting that Cox's position in this case (in which it seeks to hold them liable for damage to the Pipeline) is inconsistent with making an insurance claim for hurricane-related damage. The southern end of the Pipeline was damaged by the SEACOR POWER in April 2021, and the northern end was damaged by the HEDRON's dragging anchors in August 2021. As explained in the preceding section, Cox had to plug the Pipeline because SEACOR POWER debris was buried on the southern end of the Pipeline. The Pipeline became unusable for that reason alone, regardless of whether the northern portion of the Pipeline was damaged or undamaged. It thus does not matter that the northern end of the Pipeline was damaged, or whether Cox had insurance for that damage.

For all these reasons, whatever damage the HEDRON or Hurricane Ida did to the northern end, and whether Cox had insurance for that damage, is irrelevant because Cox's insurance does not benefit the Limitation Petitioners and is inadmissible.

## III.   CONCLUSION

The Limitation Petitioners should not be permitted to offer evidence or argument that events subsequent to the SEACOR POWER incident are superseding causes that reduce their liability. The Limitation Petitioners should also not be allowed to offer evidence or argument

- 12 -

regarding insurance that is barred by the collateral source rule.  Cox's motion should be granted, and both categories of argument or evidence should be precluded at the trial.

        Respectfully submitted,

**STONE PIGMAN WALTHER WITTMANN LLC**

Dated: April 28, 2023      */s/ Gabriel G. Silva*
        James C. Gulotta, Jr. (La. Bar No. 06590)
        Edward B. Poitevent (La. Bar No. 10564)
        Paul J. Masinter (La. Bar No. 18324)
        W. Brett Mason (La. Bar No. 22511) (T.A.)
        Bryant S. York (La. Bar No. 34165)
        Gabriel G. Silva (La. Bar No. 38893)
        909 Poydras Street, Suite 3150
        New Orleans, Louisiana  70112
        Telephone:  (504) 581-3200
        Facsimile:  (504) 581-3361
        Email:  jgulotta@stonepigman.com
                epoitevent@stonepigman.com
                pmasinter@stonepigman.com
                bmason@stonepigman.com
                byork@stonepigman.com
                gsilva@stonepigman.com

*Attorneys for Claimants Energy XXI Pipeline, LLC, Cox Operating, L.L.C., and Energy XXI Gulf Coast, Inc.*