UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF FALCON          CIVIL ACTION
GLOBAL OFFSHORE II, AS OWNER,
SEACOR MARINE LLC AS
MANAGER/OPERATOR, AND SEACOR     NO. 21-1062
LIFTBOATS LLC, AS ALLEGED
OWNER/OPERATOR OF THE SEACOR
POWER PETITIONING FOR EXONERATION
FROM OR LIMITATION OF LIABILITY     SECTION: "H"

## ORDER AND REASONS

Before the Court are Limitation Petitioners Falcon Global Offshore II LLC, Seacor Liftboats LLC, and Seacor Marine LLC's Motion for Partial Summary Judgment (Doc. 526); Claimants Cox Operating LLC, Energy XXI Gulf Coast, Inc., and Energy XXI Pipeline LLC's Motion for Leave to File Second Supplemental and Amended Claim (Doc. 534); and Motion in Limine (Doc. 531). For the following reasons, Limitation Petitioners' Motion is **GRANTED**, and Claimants' Motions are **DENIED**.

## BACKGROUND

This matter arises out of the capsizing of the L/B SEACOR POWER in the Gulf of Mexico at approximately 4:00 p.m. on April 13, 2021 as a result of severe weather conditions. The SEACOR POWER was a liftboat owned and operated by Limitation Petitioners Falcon Global Offshore II LLC, Seacor

1

Liftboats LLC, and Seacor Marine LLC (collectively "Seacor"). Claimants Cox Operating LLC ("Cox Operating"), Energy XXI Gulf Coast Inc. ("Energy XXI Gulf Coast"), and Energy XXI Pipeline LLC (Energy XXI Pipeline") (collectively, "the Cox Claimants") bring claims for the alleged damage to a pipeline caused by the SEACOR POWER, as well as economic losses from the deferred production of oil therefrom.

Seacor moves for summary judgment dismissal of the Cox Claimants' claims for economic damages pursuant to the well-established rule in *Robins Dry Dock*. The Cox Claimants oppose and also move to amend their claims to add an affiliated entity. Finally, the Cox Claimants move to exclude certain evidence at trial. This Court will consider each Motion in turn.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

### I.    Seacor's Motion for Summary Judgment

Seacor moves for dismissal of the Cox Claimants' claims for economic damages from deferred production of oil under the rule set forth by the Supreme Court in *Robins Dry Dock & Repair Co. v. Flint*.[9] *Robins Dry Dock* provides that a party cannot recover for economic loss absent physical injury

---

[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[9] 275 U.S. 303 (1927).

3

to a proprietary interest.[10] Seacor argues that the claims for economic damages should be dismissed because each of the Cox Claimants either does not have a proprietary interest in the damaged pipeline or was not economically harmed by the damage to the pipeline.

In order to better understand Seacor's argument and the Cox Claimants' response thereto, an in depth look at the relationship between the Cox Claimants is necessary. The Cox Claimants and non-claimant EPL Oil & Gas, LLC ("EPL") are all ultimately owned by Cox Investment Partners, LP. Energy XXI Gulf Coast wholly owns Energy XXI Pipeline and EPL, and Cox Operating operates each of these entities. Energy XXI Gulf Coast, Energy XXI Pipeline, and EPL do not have employees, and their officers and managers are Cox Operating executives.

It is undisputed that Energy XXI Pipeline owns the pipeline that was allegedly damaged as a result of the sinking of the SEACOR POWER ("the Pipeline"). EPL leases the wells and platforms that are connected to the Pipeline. EPL also owns the hydrocarbons that are produced by its wells and transported through the Pipeline. Cox Operating and Energy XXI Gulf Coast do not directly own any property that was physically damaged. EPL is not a party to this case and also does not own any property that sustained physical damage.[11] Only Energy XXI Pipeline owns property that was physically damaged, but it does not own the oil that was being transported through the Pipeline.

---

[10] State of La. ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019, 1021 (5th Cir. 1985) (discussing *Robins Dry Dock*, 275 U.S. 303).

[11] The Cox Claimants have moved to amend their claim to add EPL as a party. Doc. 534. As discussed below, the Court finds such an amendment to be futile.

Seacor argues that, pursuant to *Robins Dry Dock*, because Cox Operating and Energy XXI Gulf Coast do not have a proprietary interest in the Pipeline, they cannot pursue economic damages for the delayed production of oil. It alleges that although Energy XXI Pipeline is the owner of the pipeline, it also cannot recover for any economic losses for delayed oil production because it does not own the oil in the Pipeline and therefore did not suffer any economic loss. Further, it argues that even if EPL was a claimant in this action, it could not bring a claim for economic damages because it does not own any property that was physically damaged. Accordingly, Seacor argues that under *Robins Dry Dock* none of the Cox Claimants can collect for economic damages for delayed oil production, and those claims should therefore be dismissed.

In response, the Cox Claimants argue (1) that they have a sufficient proprietary interest in the Pipeline to recover for economic losses under *Robins Dry Dock* or alternatively (2) that they can recover for economic losses because the Pipeline is physically attached to their assets and they operate as an integrated unit. The Court will consider each argument in turn.

A. *Proprietary Interest*

The Fifth Circuit has held that "a plaintiff has a sufficient 'proprietary interest' to recover under *Robins Dry Dock* only if he is the actual owner of the physically damaged property or one who is 'tantamount' to an owner; that is, only if he has taken over the property at issue 'lock, stock and barrel.'"[12] It has

---

[12] Plains Pipeline, L.P. v. Great Lakes Dredge & Dock Co., 620 F. App'x 281, 285 (5th Cir. 2015).

identified as incidents of ownership "actual possession or control, responsibility for repair, and responsibility for maintenance."[13]

The Cox Claimants argue that Cox Operating has a proprietary interest in the Pipeline and therefore should be able to bring claims for economic damages. They contend that Cox Operating operates full control over the Pipeline, platform, and wells; that it sells the hydrocarbons produced from the wells; and that it maintains and repairs those assets. They also argue that Energy XXI Pipeline does not retain any responsibility to manage, operate, maintain, or repair the Pipeline.

While the Court finds the Cox Claimants' arguments compelling, it need not decide whether Cox Operating has a proprietary interest in the Pipeline because even assuming that it does, it cannot succeed on a claim for economic damages. That is because even assuming that Cox Operating has a proprietary interest in the Pipeline and can therefore bring a claim for economic damages, it has not shown that it has suffered any economic losses. As explained above, EPL owns the oil running through the Pipeline and is therefore the entity that would be damaged by a delay in production. The proprietary interest requirement of *Robins Dry Dock* does not permit Cox Operating to collect for EPL's economic damages.

Further, Cox Operating has not shown that it has its own economic damages. The only evidence that the Cox Claimants have presented this Court to show Cox Operating's economic damages is the operating agreement between Cox Operating and EPL. That agreement establishes that in exchange

---

[13] *Id.* (citing Tex. E. Transmission Corp. v. McMoRan Offshore Expl. Co., 877 F.2d 1214, 1225 (5th Cir. 1989)).

for operating and maintaining its wells, supervising the work on its wells, and selling the hydrocarbons produced by its wells, EPL pays Cox Operating a fixed fee and reimburses its expenses.[14] The operating agreement does not give Cox Operating any entitlement to the proceeds from the sale of the hydrocarbons. This arrangement was confirmed by Ben Marchive during the corporate deposition of the Cox Claimants.[15] Mr. Marchive testified that EPL owns the oil when it comes out of the ground, it is sold by a third-party company, and the proceeds from the sale are distributed to Cox Operating.[16] At that point, Cox Operating remits the proceeds back to EPL.[17] Mr. Marchive explained that Cox Operating processes the payments and treats them as a receivable to EPL for accounting purposes.[18] Accordingly, Cox Operating cannot show that it has any economic damages from the delay in production caused by the Pipeline. So, even if it has a proprietary interest in the Pipeline, it cannot succeed on a claim for economic damages. The Cox Claimants' first argument therefore fails.

   *B. Integrated Unit Exception*

   Next, the Cox Claimants argue that they can recover for economic damages under the integrated unit exception to the rule in *Robins Dry Dock* set forth in *Domar Ocean Transportation, Ltd. v. M/V Andrew Martin*.[19] In *Domar*, the Fifth Circuit allowed the owner of a damaged barge to bring a claim for economic damages sustained for loss of the use of both the barge and a tow

---

[14] Doc. 532-5.
[15] Doc. 526-3.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] 754 F.2d 616, 619 (5th Cir. 1985).

that was attached to the barge but not owned by the barge owner.[20] In so holding, the court noted that the barge owner offered the use of both of the vessels as a unit to its customers and had spent $350,000 installing a raised pilot house on the tow to enable it to be used with the barge.[21]

The Cox Claimants argue that the Pipeline and EPL's platform and wells are physically attached to one another and operate as a collective, integrated unit that is fully controlled by Cox Operating. They argue therefore that, as owners of the Pipeline, they should be allowed to recover for the economic damages of both the Pipeline and the platform and wells under *Domar*. They also argue that in addition to the physical integration of the Pipeline and platform, the "Cox umbrella of companies" works as an integrated unit to produce and transport oil from offshore platforms. Specifically, Energy XXI Pipeline owns the Pipeline that is connected to the platform owned by EPL, and both companies and assets are ultimately owned by Energy XXI Gulf Coast and operated by Cox Operating.

Seacor responds with the Fifth Circuit's opinion in *Texas E. Transmission Corp. v. McMoRan Offshore Exploration Co.*, in which the court declined to extend *Domar* to allow a platform owner to collect economic damages for lost production caused by a damaged pipeline.[22] In that case, the platform owner did not own the damaged pipeline, but it was completely and permanently integrated into its platform.[23] The court held that the platform owner could not bring a claim for economic damages because, unlike the barge

---

[20] *Id.*
[21] *Id.*
[22] 877 F.2d at 1225.
[23] *Id.*

8

owner in *Domar*, there was no physical damage to any property that it actually owned.[24] Seacor argues that the holding in *Texas E. Transmission Corp.* forecloses the Cox Claimants' argument for application of the integrated unit exception to this case.

This Court does not find either case to be on point with the facts at issue here. In *Domar*, the claimant had physical and economic damages, and the court allowed it to obtain additional economic damages for lost use of the tow that was fully integrated with the damaged barge that it owned. In *Texas Transmission*, the claimant had only economic damages and sought to rely on the physical damage of the fully integrated pipeline that it did not own to circumvent the rule set forth in *Robins Dry Dock*. Here, the Cox Claimants have physical damages only and seek to use the integrated unit exception to circumvent *Robins Dry Dock* and bring claims for the economic damages of the fully integrated platform. The Cox Claimants have not cited to any case supporting such a holding.

At its core, the Cox Claimants' argument asks this Court to ignore the corporate separateness of the Cox Claimants and EPL and treat them as one company in light of their "corporate and operational integration."[25] But "[t]he decision to create . . . separate legal entities is one that confers benefits, primarily in the aspect of limiting liability to the separate entities."[26] As another section of this Court has held, to treat the Cox Claimants as "separate entities for tax and limited liability purposes but a single entity for *Robins Dry*

---

[24] *Id.*

[25] Doc. 532.

[26] Holden v. Connex-Metalna, No. 98-3326, 2000 WL 1801844, at *2 (E.D. La. Dec. 6, 2000).

*Dock* purposes would be a dichotomy without foundation in law or logic."[27] In *State of La. ex rel. Guste v. M/V TESTBANK*, the Fifth Circuit made clear that the rule in *Robins Dry Dock* is a bright-line rule.[28] "This circuit has consistently refused to allow recovery for economic loss absent physical damage to a proprietary interest."[29] The Cox Claimants' creative, but ultimately flawed, arguments have not convinced this Court to hold otherwise. Accordingly, the Cox Claimants' claims for economic damages are dismissed.

## II.   The Cox Claimants' Motion for Leave to File Amended Complaint

In this Motion, the Cox Claimants seek to add an additional claimant, EPL Oil and Gas, LLC, to their claim in this limitation action to address the argument set forth by Seacor in its Motion for Partial Summary Judgment that the Cox Claimants are not the proper parties to assert a claim for economic damages. For the reasons discussed at length above, such an amendment would be futile. EPL did not sustain physical damage to any of its property and it therefore cannot collect economic damages under *Robins Dry Dock*.[30] Further, the Fifth Circuit's decision in *Texas E. Transmission Corp.* forecloses any argument that EPL could use the integrated unit exception to bring a claim for its economic damages based on the damage to the Pipeline that it did not own.[31] Accordingly, this Motion is denied.

---

[27] *Id.*
[28] 752 F.2d at 1029.
[29] *Id.* at 1024.
[30] *Id.*
[31] 877 F.2d at 1225.

III.   **The Cox Claimants' Motion in Limine to Exclude Evidence of Subsequent Events and Insurance**

Finally, the Cox Claimants move to exclude or limit certain evidence at the trial of this matter regarding superseding causes and insurance coverage. Specifically, they ask the Court to exclude argument that subsequent events that played a role in the damage to the Pipeline, such as Hurricane Ida, Coast Guard directives, and damage caused by another vessel, are superseding causes of their damages. Further, they seek to exclude evidence of insurance coverage under the collateral source rule.

Given that this matter is set for a bench trial, this Court finds that it need not resolve these issues pre-trial. Motions in limine are intended to prevent the introduction of prejudicial evidence to the jury.[32] "In a bench trial, such procedures are unnecessary, as the Court can and does readily exclude from its consideration inappropriate evidence of whatever ilk."[33] Accordingly, this Motion is denied.

## CONCLUSION

For the foregoing reasons, Seacor's Motion for Partial Summary Judgment is **GRANTED**, and the Cox Claimants' Motions are **DENIED**. The Cox Claimants' claims for economic damages are **DISMISSED WITH PREJUDICE**.

---

[32] O'Rear v. Fruehauf Corp., 554 F.2d 1304, 1306 (5th Cir. 1977) ("A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.").

[33] Cramer v. Sabine Transp. Co., 141 F. Supp. 2d 727, 733 (S.D. Tex. 2001).

New Orleans, Louisiana this 30th day of October, 2023.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**