## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF FALCON GLOBAL OFFSHORE II, AS OWNER, SEACOR MARINE LLC AS MANAGER/OPERATOR, AND SEACOR LIFTBOATS LLC, AS ALLEGED OWNER/OPERATOR OF THE SEACOR POWER PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 21-1062<br><br><br><br>SECTION: "H" |

## ORDER AND REASONS

Before the Court is Third-Party Defendant Donjon-SMIT, LLC's Motion for Summary Judgment (Doc. 503). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This matter arises out of the capsizing of the L/B SEACOR POWER in the Gulf of Mexico at approximately 4:00 p.m. on April 13, 2021 as a result of severe weather conditions. Thirteen individuals onboard the SEACOR POWER died, including Lawrence James Warren, II. Mr. Warren's wife and minor child ("the Warren Claimants") filed claims arising from his death in this limitation proceeding. At issue in this Motion is their third-party claim against Donjon-SMIT, LLC ("DJS") for negligence in its search and rescue operations after the SEACOR POWER capsized. DJS has moved for summary

1

judgment dismissal of the Warren Claimants' claims against it. The Warren Claimants oppose.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7]   Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

The SEACOR POWER was a liftboat operated by Seacor Marine, LLC ("Seacor"). DJS was Seacor's Oil Pollution Act of 1990 ("OPA") Safety and Marine Firefighting ("SMFF") salvage contractor, and in that role, it contracted with Seacor to provide salvage, firefighting, and lightering services under the SEACOR POWER's vessel response plan. After the SEACOR POWER capsized on April 13, 2021, DJS was immediately activated to perform SMFF salvage operations. Pursuant to its SMFF contract, DJS would receive compensation for providing those services. Due to a delay in securing the proper vessel and ongoing dangerous weather conditions, DJS was not able to begin search and rescue operations until April 15, 2021. The Warren Claimants contend that Mr. Warren survived the capsizing of the vessel for at least three days, and that he could have been rescued if DJS had timely begun rescue operations. Mr. Warren's body was ultimately recovered from the capsized vessel on April 19, 2021.

---

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

The Warren Claimants allege that as the SMFF contractor, DJS had both a legal and contractual duty to perform underwater dive rescues and that it breached that duty by failing to timely secure proper equipment and begin rescue operations. The Warren Claimants also contend that other companies offered assistance in rescuing the men but that only DJS was allowed to provide those services. DJS argues that the Warren Claimants cannot succeed on their claim because under the Good Samaritan rule, the Warren Claimants cannot show that DJS's actions worsened the position of Mr. Warren.[9]

The Good Samaritan doctrine "provides that the negligence of the volunteer rescuer must worsen the position of the person in distress before liability will be imposed."[10] The rule is applicable in maritime cases[11] and is set forth in section 324A of the Second Restatement of Torts:

> One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[12]

"Thus, '[t]he test is not whether the risk was increased over what it would have been if the defendant had not been negligent,' but rather whether '[t]he risk

---

[9] Defendant also sets forth other arguments, but this Court need not reach those.
[10] United States v. DeVane, 306 F.2d 182, 186 (5th Cir. 1962).
[11] Tidewater Marine, Inc. v. Sanco Int'l, Inc., 113 F. Supp. 2d 987, 999 (E.D. La. 2000).
[12] Restatement (Second) of Torts, § 324A.

4

[wa]s increased over what it would have been had the defendant not engaged in the undertaking at all.'"[13] The Warren Claimants contend that the Good Samaritan rule does not apply in situations where, as here, the rescuer has a legal or contractual obligation to help and received payment for that assistance.

At the outset, the Court notes that there is no evidence that DJS was under either a legal or contractual obligation to perform search and rescue operations. As Seacor's SMFF contractor, DJS agreed to perform salvage, firefighting, and lightering services in fulfillment of the requirements set forth in 33 CFR § 155 of the OPA of 1990. The SMFF contract between Seacor and DJS does not mention search and rescue services, and the provisions of 33 CFR § 155 do not require a SMFF contractor to provide search and rescue services. The Warren Claimants allege that under 33 CFR § 155.4030, DJS was required to perform an on-site assessment of the capsized vessel within six hours. But 33 CFR § 155 expressly establishes "planning criteria, not performance standards" for SMFF vessel response plans.[14] "Compliance with the regulations is based upon whether a covered response plan ensures that adequate response resources are available, not on whether the actual performance of those response resources after an incident meets specified arrival times or other planning criteria."[15] Accordingly, the Warren Claimants have not shown that DJS was obligated to perform search and rescue services

---

[13] Thames Shipyard & Repair Co. v. United States, 350 F.3d 247, 261 (1st Cir. 2003) (quoting Good v. Ohio Edison Co., 149 F.3d 413, 421 (6th Cir. 1998)).

[14] 33 C.F.R. § 155.4010.

[15] *Id.*

or that it was obligated to perform an onsite assessment of the incident within six hours.

Even so, this Court cannot find any distinction in the law between rescuers acting gratuitously or for compensation. Indeed, the Second Restatement of Torts quoted above expressly includes one who undertakes the duty to protect "for consideration."[16] The Warren Claimants do not cite to any case holding that the Good Samaritan rule excludes those acting under an obligation or for compensation. The Warren Claimants point only to 46 U.S.C. § 2303 in support of their argument. Section 2303, however, merely replicates the Good Samaritan rule. It states that a master complying with the obligation to render assistance to an individual affected by a marine casualty event, or another person acting gratuitously to render aid, is not liable for damages as a result of rendering that assistance "when the individual acts as an ordinary, reasonable, and prudent individual would have acted under the circumstances."[17] Accordingly, § 2303 does not support the Warren Claimants' argument that the Good Samaritan rule applies only to those acting gratuitously. This Court agrees with DJS that the Good Samaritan rule applies here.

To succeed on their claim that DJS acted negligently in its rescue efforts under the Good Samaritan rule, the Warren Claimants must show that DJS's actions worsened Mr. Warren's situation. The Warren Claimants allege only that DJS delayed in beginning its rescue operations and thereby missed the opportunity to rescue Mr. Warren. There is no evidence that DJS increased the

---

[16] Restatement (Second) of Torts § 324A (Am. Law Inst. 1965).
[17] 46 U.S.C. § 2303.

risk to Mr. Warren over what it would have been had DJS not engaged in the undertaking at all.[18] Nor have the Warren Claimants presented evidence that any other potential rescuer could have begun rescue operations sooner or succeeded in rescuing Mr. Warren.[19] Accordingly, the Warren Claimants cannot succeed on their claims of negligence against DJS under the Good Samaritan rule.

## **CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED**, and the Warren Claimants' claims against DonJon-SMIT, LLC's are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 1st day of December, 2023.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[18] *Thames Shipyard & Repair Co.*, 350 F.3d at 261; *see* Rodrigue v. United States, 968 F.2d 1430, 1435 (1st Cir. 1992).

[19] Cohen v. United States, No. 3:13-CV-1525-J-20MCR, 2016 WL 3647595, at *5 (M.D. Fla. Jan. 7, 2016) ("To prove a rescuer worsened a situation by inducing reliance on the rescuer's efforts, a plaintiff must show both that a would-be rescuer's forbearance was actually induced by the rescuer, and that the deterred would-be rescuer would have succeeded."); *see Rodrigue*, 968 F.2d at 1435.

7